UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOHN MARIONNEAUX | * | CIVIL ACTION NO.: |
| | * | |
| VERSUS | * | |
| | * | |
| DISA GLOBAL SOLUTIONS, INC., DISA | * | JUDGE: |
| HOLDINGS CORP., DISAWORKS, | * | |
| UNIVERSITY SERVICES, GULF SOUTH | * | |
| MEDICAL TESTING LLC CLINIC AND | * | |
| MEDICAL REVIEW OFFICER | * | MAGISTRATE JUDGE: |

## NOTICE OF REMOVAL AND IMPROPER JOINDER

## I.      INTRODUCTION

1.      Pursuant to 28 U.S.C. §§ 1332(a)(1), 1441(a) & 1446, Defendant DISA Global Solutions, Inc., improperly identified as DISA Holdings Corp., ("DISA")[1] files this Notice of Removal and Improper Joinder (the "Notice of Removal") seeking the removal to this Court of the action styled, *John Marionneaux v. DISA Global Solutions, Inc., DISA Holdings Corp., DISAWorks, University Services, Gulf South Medical Testing LLC Clinic, and Medical Review Officer*, Cause No. 19-11243, from the Civil District Court for the Parish of Orleans, Louisiana. DISA removes this case on the basis of this Court's original diversity and amount-in-controversy jurisdiction under 28 U.S.C. § 1332(a) and on grounds that the only non-diverse defendant, Gulf South Medical Testing, LLC, improperly identified as Gulf South Medical Testing LLC Clinic, ("Gulf South") has been improperly joined in this action for the purpose of destroying diversity. Plaintiff has failed to (and cannot) plead any facts supporting his causes of action against Gulf

---

[1] DISA Global Solutions, Inc. is the only properly named DISA entity in this lawsuit.  DISA Holdings Corp. is a Delaware corporation but does not operate as a drug test administrator, which is solely the purview of DISA Global Solutions, Inc.  DISAWorks is not a business entity.  It is a product developed by DISA Global Solutions, Inc.

South. Thus, Gulf South has been improperly joined for the purpose of defeating this Court's diversity jurisdiction and the Court should disregard the citizenship of Gulf South in reviewing this Notice of Removal. None of the remaining Defendants are citizens of Louisiana. Further, Plaintiff's alleged damages exceed $75,000.00, exclusive of interest and costs. Therefore, complete diversity of citizenship exists among Plaintiff and the properly joined Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. For the reasons that follow, this Court has jurisdiction over this matter, and it is properly removed to this Court pursuant to 28 U.S.C. § 1332, § 1441, and § 1446.

## II. ARGUMENT & AUTHORITY

### A. Procedural Requirements and Timeliness of Removal

2. On October 24, 2019, Plaintiff John Marionneaux ("Plaintiff" or "Marionneaux") filed his Petition for Injunctive Relief and Protective Order (the "Petition") in Cause No. 19-11243, in the Civil District Court for the Parish of Orleans, Louisiana (the "State Court Action").

3. Pursuant to 28 U.S.C. § 1446(a), attached as <u>Exhibit 1</u> to this Notice of Removal are copies of "all process, pleadings, and orders" served on DISA in this matter.

4. DISA was served with a copy of this lawsuit on December 10, 2019. Thus, this Notice of Removal is timely under 28 U.S.C. § 1446(b)(1), which requires that it be filed within 30 days of Defendant's receipt or service of the petition.

5. The United States District Court for the Eastern District of Louisiana is the federal district court embracing the place where the State Court Action is pending and is thus the proper venue under 28 U.S.C. § 98(a) and § 1446(a).

6. Immediately following the filing of this Notice of Removal, DISA will serve written notice of the filing on Plaintiff's counsel, as required by 28 U.S.C. § 1446(d).

2

7.     DISA will also file a copy of this Notice of Removal with the Clerk of the Civil District Court for the Parish of Orleans, Louisiana, where the State Court Action is pending, as required by 28 U.S.C. § 1446(d).

8.     By removing this action to this Court, DISA does not waive any defenses, objections, or motions under state or federal law, including the right to compel arbitration.

**B.     Amount in Controversy**

9.     Removal is proper on the basis of amount in controversy asserted if the court finds, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  28 U.S.C. § 1446(c)(2)(B).  In establishing the amount in controversy, Defendants may rely on allegations in the Petition.  *See McPhail v. Deere & Co.*, 529 F.3d 947, 955-56 (10th Cir. 2008) (defendant "may rely on an estimate of potential damages from the allegations in the complaint," and a "complaint that presents a combination of facts and theories of recovery that may support a claim in excess of $75,000 can support removal"); *see also In re Carter*, 618 F.2d 1093, 1101 (5th Cir. 1980) ("It is a fundamental principle of law that whether subject matter jurisdiction exists is a question answered by looking at the complaint as it existed at the time the petition for removal was filed.").  "Under Louisiana law, plaintiffs are not limited to recovery of the damages requested in their pleadings." *Alford v. Gen. Ins. Co. of Am.*, No. CV 11-83-JJB-SCR, 2011 WL 13214350, at *3 (M.D. La. Apr. 15, 2011), report and recommendation adopted, No. CV 11-83-SCR, 2011 WL 13214358 (M.D. La. May 10, 2011) (citing LA CIV. CODE PROC. art. 862).  If it is facially apparent from the Petition that the amount in controversy exceeds the jurisdictional minimum, then no strict proof is required from the defendant.  *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000).

10.     It is facially apparent from reviewing Plaintiff's allegations and claims in the Petition that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Plaintiff asserts claims of intentional interference with prospective contractual relations, deceptive trade practices under the Louisiana Unfair Trade Practices Act ("LUTPA"), negligence, and seeks injunctive relief.   (*See* Ex. 1 at Petition, Counts I-IV.) Plaintiff alleges that he has suffered "irreparable harm, emotional distress, … irreparable injury to his family, … substantial financial hardship and … grave loss." (Ex. 1 at Petition, Count I, ¶ D.) He alleges further that he has suffered "loss of income and livelihood [and] has been unable to find comparable employment." (*Id*. at Count I, ¶ G; *see also id*. at Count II, ¶ E.) Marionneaux also claims he has suffered "emotional distress, mental anguish, pain and suffering, [and] loss of employment benefits." (*Id*. at Count III, ¶ E.) In his Prayer for Relief, Marionneaux seeks "[c]ompensatory damages, [a]ll statutory double and treble damages permitted by law," attorney's fees, and costs.  (*Id*. at Prayer for Relief.)

11.     These claims and alleged damages take this matter past the $75,000 threshold for this Court's jurisdiction.  Other courts in the Fifth Circuit have found language similar to that used in Plaintiff's Petition sufficient to meet the threshold.  *See Holden v. Illinois Tool Works, Inc.*, No. CIV.A. H-08-2783, 2008 WL 4937597, at *3, n.3 (S.D. Tex. Nov. 17, 2008), *aff'd*, 429 F. App'x 448 (5th Cir. 2011)  ("facially apparent from her petition that the amount in controversy exceeds $75,000" where plaintiff's state court petition sought "back pay, reinstatement or front pay in lieu of reinstatement, loss of benefits in the past, loss of benefits in the future … [c]ompensatory damages for pain and mental suffering in the past and future … [p]unitive damages in an amount above the minimum jurisdictional limit of the [state court], and attorney's fees …."); *White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003) (facially apparent that amount in controversy requirement met when plaintiff sought "punitive damages, attorney's fees, pre-judgment interest,

court costs, and compensatory damages for lost pay, lost fringe benefits, front pay, loss of wage earning capacity, harm to [plaintiff's] credit and credit reputation, and mental anguish and emotional distress"); *Martin v. Sw. PCS, L.P.*, 2003 WL 22477692, at *3 (W.D. Tex. Nov. 3, 2003) (plaintiff's request of damages for past and future lost wages, nonpecuniary damages for severe emotional distress, injury to reputation, and punitive damages facially demonstrated a claim in excess of $75,000).

12.     Louisiana's Code of Civil Procedure, article 1732 provides, in pertinent part, that "[a] trial by jury shall not be available in: (1) A suit where the amount of no individual petitioner's cause of action exceeds fifty thousand dollars exclusive of interest and costs, except as follows: ..." When a Plaintiff demands a jury trial, as Marionneaux did in this case, it is presumed that the amount in controversy exceeds $50,000.  *See Navarrete v. Jarrell*, 2018-1059, 2019 WL 3852892018-1059 (La. App. 4 Cir. 1/30/19), --- So.3d ----; *see also* Prudential Ins. Co. v. Gideon, 2002-0532 (La. App. 1 Cir. 2/14/03), 845 So. 2d 437, 440–41 ("Because the right to a jury trial does not come into existence unless a petitioner's cause of action exceeds the requisite jurisdictional amount, either plaintiff or defendant may allege that the claim exceeds the requisite amount, thereby establishing the right or the absence of the right to a jury trial.") (citing *May v. Winn Dixie Louisiana, Inc.*, 613 So.2d 1026, 1028 (La. App. 3d Cir.), writ denied, 616 So.2d 704 (La.1993)).

13.     In addition, courts have found the jurisdictional threshold met in similar drug testing cases.  *See Thomas v. Adecco USA, Inc.*, No. 1:13-CV-00070-JAW, 2013 WL 6119073, at *5 (D. Me. Nov. 21, 2013) (threshold met where plaintiff brought suit after failing drug test and sought "compensatory and punitive damages against [defendant], including but not limited to back wages and compensation for emotional and mental distress" and either "equitable relief in the form

of reinstatement, or in the alternative … additional compensatory damages including front pay."); *see also Leslie v. BancTec Serv. Corp.*, 928 F. Supp. 341, 348–49 (S.D.N.Y. 1996) (holding in case regarding a failed random drug test that plaintiff's request for reinstatement and back pay prevented court from determining "with a legal certainty" that the claim was for less than the then-threshold of $50,000.").

14.     Further, as set forth in the attached declaration of DISA's counsel, Marionneaux's counsel represents plaintiffs in numerous lawsuits against DISA alleging the same or similar causes of action under virtually the same facts and in each one, has alleged or attempted to establish damages well in excess of $75,000.  (*See* Declaration of Holly Williamson, attached as <u>Exhibit 2</u>, at ¶¶ 2-6.) Moreover, in cases that DISA removed from state court to federal court on the basis of diversity of jurisdiction where DISA was sued by donors who tested positive for drugs and who claimed they did not use drugs, the plaintiffs have not challenged that the amount in controversy exceeded $75,000.  *See Emile Tilson Jr., et. al. v. DISA Global Solutions, Inc., et al.*, Cause No. 3:17-CV-00240-SDD-EWD, M.D. La.; *LeBlanc v. DISA,* Middle District of Louisiana; *Shane Thibodeaux, et al. v. DISA Global Solutions, Inc., et al.,* No. 3:18-cv-00651-SDD-RLB, M.D. La.; *Andrew Jones v. DISA Global Solutions, Inc.*, et al., Cause No. C661367, 19th Judicial District Court of the Parish of East Baton Rouge, Louisiana (removed to M.D. La. and subsequently remanded for lack of diversity (not amount in controversy) after the plaintiff amended his petition to name a non-diverse defendant); *Gerald James Mire, III and Hallie White Mire v. DISA Global Solutions Inc., et al.*, Cause No. 3:18-cv-00137-BAJ-RLB, M.D. La.; *Joshua Oliver v. DISA Global Solutions, Inc., et al.*, No. 2:16-01582-JTT-KK, W.D. La.; *David M. Wells v. DISA Global Solutions, Inc.*, No. 6:17-cv-00014-UDJ-PJH, W.D. La.; *Anthony Whiting v. DISA Global Solutions, Inc.*, No. 1:15-cv-00099-JCH-GBW, D.N.M.

6

15.     Finally, while not dispositive of the amount in controversy, it is worth noting that Plaintiffs have not taken advantage of the Louisiana procedural law (LA. CODE CIV. PROC. art. 893) that allows them to allege that the amount in controversy is less than the jurisdictional threshold. *See Boyce v. CUSA, LLC*, No. 18-CV-0157, 2018 WL 834948, at *1 (W.D. La. Feb. 12, 2018) ("Most Louisiana federal courts have stated that a plaintiff's failure to include an Article 893 allegation, alone, is insufficient to establish the amount in controversy, but the omission is entitled to "some consideration" in the inquiry.) (quoting *Davis v. LeBlanc*, 2017 WL 4399275, *2 (W.D. La. 2017) (collecting cases)).

**C.     Law Governing Removal Based on Improper Joinder of a Non-Diverse Defendant**

16.     Federal district courts have original jurisdiction of all civil actions in which the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and which are: (1) between citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in by 28 U.S.C. § 1603(a), as plaintiff and citizens of a State or different States. 28 U.S.C. § 1332(a).

17.     For purposes of removal and remand, under the doctrine of improper or fraudulent joinder, courts must disregard the citizenship of a defendant when that defendant has been named in the lawsuit in order to destroy the Court's diversity jurisdiction or if the plaintiff cannot establish a cause of action against that defendant. *See, e.g., LeBlanc v. DISA Glob. Sols., Inc.*, No. CV 17-76-SDD-EWD, 2017 WL 5147660, at *10 (M.D. La. Oct. 5, 2017), *report and recommendation adopted,* No. CV 17-76-SDD-EWD, 2017 WL 5147150 (M.D. La. Nov. 6, 2017) (denying plaintiff's motion for remand on grounds that defendants met their burden to show that plaintiff could not establish negligence against non-diverse defendant); *Tipton v. Landen*, No. 6:15-CV-

7

02811, 2016 WL 919539, at *5 (W.D. La. Mar. 8, 2016) (citing *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)) ("When the parties are not diverse, the doctrine of improper joinder permits removal and precludes remand when there is either actual fraud in the pleading of jurisdictional facts or an inability of the plaintiff to establish a cause of action against a nondiverse party[; i]n that limited situation, the citizenship of a nondiverse party can be disregarded."); *Ouber v. JPMorgan Chase Bank, Nat'l Ass'n*, No. CV 15-100-SDD-RLB, 2015 WL 5138494, at *5 (M.D. La. Aug. 28, 2015) ("[T]he citizenship of a nominal party is disregarded in determining the existence of diversity jurisdiction as only the citizenship of the parties with a real interest in the case will be considered.") (internal citation omitted, alteration in original); *Cormie's Grocery & Deli, Inc. v. Colony Ins. Co.*, No. CIV.A. 12-562, 2012 WL 2906634, at *2 (W.D. La. July 16, 2012) ("It is well-established under the improper joinder doctrine that if a court finds that a party has been improperly joined in order to destroy the diversity necessary for a Federal Court to exercise its constitutionally limited jurisdiction, the citizenship of the improperly joined party may be disregarded thus allowing the case to proceed.")

18.     In the Fifth Circuit, "'[i]mproper joinder can be established in two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) (quoting *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013)).[2]

---

[2] Generally, removal requires the consent of all co-defendants. *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993).  "In cases involving alleged improper or fraudulent joinder of parties, however, application of this requirement to improperly or fraudulently joined parties would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists." *Id.*

**D.      All Properly Joined Defendants are Diverse**

19.      The citizenship of a natural person is determined by their domicile.  *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).  Plaintiff alleges that he is a resident of New Orleans, Louisiana. (Ex. 1 at Petition, ¶ 2.) Therefore, Plaintiff is a citizen of Louisiana.

20.      A corporation is a citizen of the state in which it is incorporated and the state in which its principal place of business is located.  *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008); 28 U.S.C. § 1332(c)(1).  Defendant DISA is a Delaware corporation with its principal place of business in Harris County, Texas.  Therefore, Defendant DISA is a citizen of Delaware and Texas.

21.      The citizenship of a limited liability company is determined by the citizenship of its members.  *Harvey*, 542 F.3d at 1080.  Defendant University Services, LLC d/b/a University Services ("University"), improperly identified as University Services, is a Delaware limited liability company with its principal place of business in Pennsylvania.  DISA is the sole member of University.  Therefore, University is a citizen of Delaware, and Pennsylvania, with its sole member a citizen of Delaware and Texas.

22.      Defendant "Medical Review Officer" ("MRO") presumably refers to the individual who reviewed Plaintiff's positive drug test result to determine if it could have had a legitimate explanation.  University employed or contracted with the MRO in this case.  Exhibit 1 to Plaintiff's Petition identifies the two individuals who may have served as the MRO in this case: Randy Barnett, D.O. ("Dr. Barnett") and Terri Hellings, M.D. ("Dr. Hellings").  Both Dr. Barnett and Dr. Hellings reside and work in Pennsylvania.  Neither of them are citizens of Louisiana.  Therefore, Defendant "Medical Review Officer" is not a citizen of Louisiana.  *See Coury*, 85 F.3d at 248.

23.     Defendant Gulf South is a Louisiana limited liability company with its principal place of business in Hammond, Louisiana.  Therefore, Gulf South is a citizen of Louisiana.

24.     Thus, complete diversity of citizenship exists between Plaintiff and all of the Defendants except for Gulf South.  The Court must disregard Gulf South's citizenship, however, as Plaintiff cannot establish his claims against Gulf South and therefore, that entity was improperly joined in this action in order to destroy the Court's diversity jurisdiction.  *See e.g., LeBlanc*, 2017 WL 5147660, at *10 (denying plaintiff's motion for remand on grounds that defendants met their burden to show that plaintiff could not establish negligence against non-diverse defendant); *Tipton*, 2016 WL 919539, at *5 (citing *Smallwood*, 385 F.3d at 573) ("When the parties are not diverse, the doctrine of improper joinder permits removal and precludes remand when there is either actual fraud in the pleading of jurisdictional facts or an inability of the plaintiff to establish a cause of action against a nondiverse party[; i]n that limited situation, the citizenship of a nondiverse party can be disregarded."); *Cormie's Grocery & Deli, Inc.*, 2012 WL 2906634, at *2 ("It is well-established under the improper joinder doctrine that if a court finds that a party has been improperly joined in order to destroy the diversity necessary for a Federal Court to exercise its constitutionally limited jurisdiction, the citizenship of the improperly joined party may be  disregarded thus allowing the case to proceed."); *Ouber*, 2015 WL 5138494, at *5 ("[T]he citizenship of a nominal party is disregarded in determining the existence of diversity jurisdiction as only the citizenship of the parties with a real interest in the case will be considered.").

E.     **Plaintiff Has Not Alleged Sufficient Facts to State a Claim Against Gulf South.**

25.     Plaintiff asserts claims of intentional interference with prospective contractual relations, deceptive trade practices under the Louisiana Unfair Trade Practices Act ("LUTPA"), negligence, and seeks injunctive relief.  (*See* Ex. 1 at Petition, Counts I-IV.) DISA contends that Plaintiff is unable to establish a cause of action against Gulf South.  The test for determining

whether a plaintiff cannot establish a cause of action against a non-diverse defendant "is whether the [removing] defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Davidson*, 819 F.3d at 765.  In conducting this analysis, a court looks at the allegations contained in the complaint.  *Id*. (citing *Mumfrey*, 719 F.3d at 401).  If, with respect to the purported improperly joined party, a plaintiff can survive a Rule 12(b)(6) challenge for failure to state a claim, there is ordinarily no improper joinder.  *Id*. (citing *Mumfrey*, 719 F.3d at 401, and *Smallwood*, 385 F.3d at 573).  When "a complaint states a claim that satisfies 12(b)(6), but has 'misstated or omitted discrete facts that would determine the propriety of joinder … the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.'"  *Mumfrey*, 719 F.3d at 401 (quoting *Smallwood*, 385 F.3d at 573).  "[T]he decision regarding the procedure necessary in a given case must lie within the discretion of the trial court."  *Davidson*, 819 F.3d at 765 (quoting *Smallwood*, 385 F.3d at 573).

26.     The only facts Marionneaux alleges in his Petition regarding Gulf South are as follows:

> DISA contracted with Defendant, [Gulf South] to collect Plaintiff's **hair sample**. Upon information and belief, Gulf South's error in the collection of Plaintiff's **hair** specimen caused the mix up of the samples resulting in an error.  Gulf South's errors in the collection and labeling of Plaintiff's sample has resulted in Plaintiff's inability to work at zero tolerance work sites and has substantially impacted Plaintiff['s] employability and destroyed his reputation in the community.  DISA is vicariously liable for the failures of the collection clinic.

(<u>Ex. 1</u> at Petition, ¶ 15(e) (emphasis added).)

27.     The remainder of Plaintiff's Petition is devoid of any reference to any alleged wrongdoing by Gulf South and instead focuses on allegations against DISA and the MRO.

Specifically, Plaintiff alleges that he was told by a MRO in 2017 that he had a failed a drug test but that the medical review officer "realized that the social security number associated with the positive urine test was not Plaintiff's[;]" that "Plaintiff was told that the [medical review officer] had made an error and that Plaintiff's name was incorrectly associated to the cocaine positive 2017 drug test result[;]" and that the medical review officer "would correct the error." (*Id*. at Petition, ¶ 12.) Marionneaux alleges further as follows:

> The MRO conducted two interviews with Plaintiff in 2017 **regarding the error he made** in mixing up Plaintiff's **hair** drug test result with another employee's result. The MRO determined that [Plaintiff's] hair specimen was negative for all illegal drugs. **The MRO failed to correct his 2017 error** in the DISA and DISAWorks drug testing database systems.
> …
> **Because of DISA's MRO's error**, [Plaintiff] has been unable to earn income… [and] has been locked out of worksites because of **the DISA error** ….

(*Id*. at Petition, ¶ 15(a)-(b) (emphasis added).)

28.     As an initial matter, the August 2017 positive drug test at issue was a urine sample test, not a hair sample test.  (*See id*. at Petition, at Exhibit 1, pp. 1 and 3 (Drug Test Result Certificates identifying the tests as urine sample tests.)).  Confusingly, Plaintiff references a hair sample throughout his Petition.  (*See, e.g., id*. Ex. 1 at Petition, ¶ 15(e).) Allegations regarding hair samples have nothing to do with the actual test underlying Plaintiff's claims and thus cannot suffice to state a claim against Gulf South.

29.     Further, besides Plaintiff's sole conclusory allegation that Gulf South committed "errors in the collection and labeling of [his] sample," his entire Petition asserts allegations against DISA and the MRO, whom he claims mixed up his results with another donor's and mistakenly informed him in 2017 that his sample tested positive.  Plaintiff does not allege facts explaining how any conduct on the part of Gulf South caused the MRO to allegedly mistake another donor's positive result for Plaintiff's.  In other words, Plaintiff has not alleged facts sufficient to state a

claim for any of his causes of action against Gulf South.

30.     The Middle District of Louisiana recently reviewed a case similar to the one at bar and determined that because the Plaintiff could not establish a negligence claim against the non-diverse sample collector, the sample collector's citizenship had to be disregarded, and the case was properly removed.  *See LeBlanc v. DISA Glob. Sols., Inc.*, No. CV 17-76-SDD-EWD, 2017 WL 5147660, at *10 (M.D. La. Oct. 5, 2017), *report and recommendation adopted*, No. CV 17-76-SDD-EWD, 2017 WL 5147150 (M.D. La. Nov. 6, 2017).  In *LeBlanc*, the plaintiff claimed that the collector failed to obtain information about his prescriptions during the collection process, which if obtained, would have prevented the alleged false-positive drug test result.  *Id*. at *8.  Like Marionneaux, LeBlanc's allegations were against DISA and the MRO, not the collector.  *See id*. Accordingly, the Court found that DISA had met its burden to show that Plaintiff could not establish a cause of action for negligence against the collector.  As set forth in Marionneaux's Petition, his causes of action arise from DISA and the MRO allegedly "failing to properly and adequately report" his results.  (Ex. 1 at Petition, Count III, ¶ (C).)  There are no allegations that the collector had anything to do with DISA and the MRO's alleged "failure to report."

31.     As with the other cases Plaintiff's counsel has filed against DISA,[3] Plaintiff attempts to get around the issue of Gulf South's non-involvement by asserting all of his claims against "the Defendants." (*See* Ex. 1 at Petition, Counts I-IV.) But such allegations are insufficient,

---

[3] *See Andrew Jones v. DISA Global Solutions, Inc., et al.*, Cause No. C661367, 19th Judicial District Court of the Parish of East Baton Rouge, Louisiana; *Jose Gregorio Sandoval and Ann Marie Sandoval v. DISA Global Solutions, Inc., et al.*, Cause No. 01-17-00846-CV, Court of Appeals of Texas, Houston (1st Dist.) (motion for reconsideration filed); *Emile Tilson Jr., et al. v. DISA Global Solutions, Inc., et al.*, Cause No. 3:17-CV-00240-SDD-EWD, M.D. La.; *Gerald James Mire, III and Hallie White Mire v. DISA Global Solutions Inc., et al.*, Cause No. 3:18-cv-00137-BAJ-RLB, M.D. La. (now dismissed); *Rotilio Frank Martinez v. DISA Global Solutions, Inc., et al.*, Cause No. 18-CV-00220-DAE, W.D. Tex., San Antonio Division; *Irvin H. Dauphine, Jr. v. DISA Global Solutions, Inc., et al.*, Cause No. 20185493, 15th Judicial District Court of the Parish of Lafayette, Louisiana; and *Brady Bass v. DISA Global Solutions, Inc., et al.*, Cause No. C661547, 19th Judicial District Court of the Parish of East Baton Rouge, Louisiana.

even at the stage of removal.  *See Roussell v. PBF Consultants, LLC*, No. CV 18-899-JWD-EWD, 2019 WL 2395501, at *5 (M.D. La. Apr. 15, 2019), *report and recommendation adopted in part, rejected in par as moot*, No. CV 18-899-JWD-EWD, 2019 WL 2578763 (M.D. La. June 24, 2019) (finding Plaintiff failed to state a claim in context of a removal on improper joinder grounds where petition  "collectively refer[red] to 'Defendants' and assert[ed] generally that all Defendants were negligent").  In *Roussell*, the court found that "Plaintiff's allegation of 'Defendants'' knowledge based on the 'highly dangerous' nature of the sand tank such that an accident was 'substantially certain to occur' **to be the sort of conclusory allegation that this Court is not required to accept**." *Id.* at *6 (emphasis added).  The *Roussell* court stated further that the plaintiff's "generalized, conclusory allegations against all Defendants collectively" failed to state a claim and that the plaintiff had not "provided any factual underpinning for her assertion[s]" that would enable her claims to stand against the non-diverse defendants.  *Id.*

32.    The same analysis from *Roussell* applies here.  Plaintiff only mentions Gulf South in one paragraph in his Petition (besides his recitation of the parties) and asserts only vaguely that Gulf South made "errors in the collection and labeling of [his] sample." However, his theory of recovery is not premised on a compromised collection process, but on alleged mistakes by the MRO and DISA in associating his name with another donor's positive result.  Thus, like the plaintiff in *Roussell*, Plaintiff's allegations "lack any factual underpinning" relating to Gul South. 2019 WL 2395501 at *6.

**F.    Plaintiff's Claims are Barred by Prescription and/or Peremption.**

33.    Plaintiff's claim for intentional interference with prospective contracts, in addition to not being cognizable against any of the Defendants (as explained further below), is a tort remedy and thus subject to a one-year prescription period.  *See Cowan v. Fid. Interstate Life Ins. Co.*, No. CIV.A. 87-4902, 1989 WL 13555, at *6 (E.D. La. Feb. 13, 1989) (intentional interference with

prospective economic advantage is a tort and prescribed where plaintiff knew of alleged tortious act prior to one-year prescriptive period).

34.     The LUTPA also has a one-year statute of limitations, which is preemptive and therefore cannot be suspended.  *See, e.g., Canal Marine Supply, Inc. v. Outboard Marine Corp. of Waukegan, Ill.*, 522 So. 2d 1201, 1203 (La. Ct. App. 1988) (one-year period in which to bring actions under Unfair Trade Practices Act is peremptive and therefore not subject to interruption or suspension despite assertion that injured party was unaware of acts giving raise to cause of action); *Glod v. Baker*, 2004-1483 (La. App. 3 Cir. 3/23/05), 899 So. 2d 642, 649, *writ denied*, 2005-1574 (La. 1/13/06), 920 So. 2d 238 (same).

35.     Likewise, Plaintiff's negligence claim has a one-year prescriptive period that begins to run on the date he discovered or should have discovered the facts on which his claim is based.  *See Netherland v. Ethicon, Inc.*, 35,229 (La. App. 2 Cir. 4/5/02), 813 So. 2d 1254, 1260, *writ denied*, 2002-1213 (La. 6/21/02), 819 So. 2d 339; *Griffin v. Kinberger*, 507 So.2d 821 (La. 1987); *Chandarlis v. Shah*, 535 So.2d 895 (La. App. 2d Cir.1988).

36.     Plaintiff admits that he learned of his allegedly false-positive drug test on August 30, 2017.  (*See* Ex. 1 at Petition, ¶¶ 10-12.) He also attached documents to his Petition that his sample was collected and results verified on August 30, 2017 and September 7, 2017, respectively. (*Id*. at Petition, Exhibit 1, pp. 1 and 3.) Thus, Plaintiff received his allegedly erroneous drug test results no later than September 7, 2017.  He filed this lawsuit on October 24, 2019, over two years after receiving his allegedly false-positive result and over one year after the prescriptive period expired and are thus barred. Because he cannot establish these claims against Gulf South, its citizenship must be disregarded and this case is properly removed to this Court.  See *Oliver v. DISA Glob. Sols., Inc.*, No. CV 2:16-01582, 2017 WL 460783, at *4 (W.D. La. Feb. 2, 2017) ("The

court finds that [plaintiff] knew in October 2010 that the Drug Test showed a positive result[;] Therefore the one year statute of limitations for both the negligence claim and the defamation claim began in October 2010.")

**G.    Plaintiff Cannot Establish His Claim for Intentional Interference with Prospective Contracts.**

37.    Plaintiff cannot establish his claim for intentional interference with prospective contractual relations against Gulf South because the tort does not apply generally to the alleged facts in this case or specifically to Gulf South's alleged involvement.  "The tort of intentional interference with a contract, as limited by the Supreme Court, **applies to a corporate officer interfering with his employer's contractual relations with third persons.**" *White v. White*, 641 So. 2d 538, 542 (La. Ct. App.), writ denied, 94-2456 (La. 12/19/94), 648 So. 2d 402, *writ denied*, 94-2467 (La. 12/19/94), 648 So. 2d 402 (citing *9 to 5 Fashions, Inc. v. Spurney*, 538 So. 2d 228, 234 (La. 1989) (emphasis added)).  A tortious interference with contract claim in Louisiana applies only to a corporate officer interfering with his employer's contractual relations with third persons and requires the following elements: "(1) the existence of a contract or a legally protected interest between the plaintiff and the corporation, (2) the corporate officer's knowledge of the contract, (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome, (4) absence of justification on the part of the officer, (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer." *Sun Drilling Prod. Corp. v. Rayborn*, 2000-1884 (La. App. 4 Cir. 10/3/01), 798 So. 2d 1141, 1155, <u>writ denied,</u> 2001-2939 (La. 1/25/02), 807 So. 2d 840 (citing *9 to 5 Fashions, Inc.* 538 So. 2d at 234).

38.    Given that no corporate officer is named in his Petition, Plaintiff cannot establish his tortious interference with contract claim against any of the Defendants and certainly not against

Gulf South.  Even if his tortious interference claim were somehow cognizable against Gulf South (or any other Defendant), Plaintiff does not allege any facts supporting the remaining elements of his tortious interference claim.  Thus, Plaintiff cannot establish his tortious interference with contract claim against Gulf South and that claim should be disregarded in evaluating DISA's Notice of Removal.

**G.      Plaintiff Cannot Establish His LUTPA Claim.**

39.      The LUTPA prohibits any "unfair or deceptive acts or practices in the conduct of any trade or commerce," and grants a right of action to "[a]ny person who suffers any ascertainable loss" from a violation of this prohibition.  *Cheramie Servs., Inc.*, 35 So. 3d at 1059; *see also* La. Rev. Stat § 51:1405(A) and § 51:1409(A).  Plaintiff cannot establish his LUTPA claim against Gulf South because he does not allege and cannot allege that Gulf South "engaged in conduct that 'offends established public policy and...is immoral, unethical, oppressive, unscrupulous, or substantially injurious.'" *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390, 405-06 (E.D. La. 2016) (citing *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633 (La. 4/23/10), 35 So. 3d 1053, 1059).  The LUTPA does not prohibit "sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions" and, "the range of prohibited practices under LUTPA is extremely narrow." *Id.*

40.      Marionneaux has stated no facts that would bring Gulf South under the LUTPA's purview.  Plaintiff's claims arise entirely out of DISA and the MRO's alleged negligent reporting.  (*See* Ex. 1 at Petition, ¶ 15.) "Fraud, misrepresentation, deception, and similar conduct is prohibited, mere negligence is not" actionable under the LUTPA. *First Am. Bankcard, Inc.*, 178 F. Supp. 3d At 405-06 (citing *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir.1993), citing *Marshall v. Citicorp*, 601 So.2d 669, 670 (La. App. 5 Cir.1992)).  There are simply no facts

17

in Plaintiff's Petition relating to Gulf South that amount to conduct that is actionable under the LUTPA.

**H.    Plaintiff Cannot Establish His Negligence Claim.**

41.    In order to establish a claim for negligence in Louisiana, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element).  *Robert v. Turner Specialty Servs., L.L.C.*, 50,245 (La. App. 2 Cir. 11/18/15), 182 So. 3d 1069, 1073; *see also Nagle v. Gusman*, 61 F. Supp. 3d 609, 620 (E.D. La. 2014) (same).

42.    The only alleged facts regarding Gulf South that Plaintiff asserts in his Petition are that "DISA contracted with [Gulf South] to collect Plaintiff's hair sample"; that "upon information and belief, Gulf South's error in the collection of Plaintiff's hair specimen caused the mix up of the samples resulting in an error"[;] and that Gulf South's "errors in the collection and labeling of Plaintiff's sample has resulted in Plaintiff's inability to work at zero tolerance work sites and has substantially impacted Plaintiff['s] employability and destroyed his reputation in the community." (Ex. 1 at Petition, ¶ 15(e) (emphasis added).)

43.    Plaintiff fails to assert a negligence cause of action against Gulf South.  Nowhere in Count IV of his Petition does Plaintiff mention Gulf South or allege that Gulf South engaged in any alleged negligent act.   Rather, Plaintiff merely asserts conclusory allegations about "Defendants" breaching an unstated duty by allegedly "failing to properly and adequately **report**

Plaintiff's samples." (*See* Ex. 1 at Petition, Count IV (emphasis added).) **The only facts pleaded as to reporting involve DISA and the MRO.** (Ex. 1 at Petition, ¶ 15.) Plaintiff makes no attempt to state any facts that would support his claims that Gulf South was negligent in any with respect to his drug test. Moreover, nothing in Plaintiff's conclusory allegations regarding Gulf South provides any basis for the duty, breach, or cause elements of Plaintiff's negligence claim.

44.     Indeed, Plaintiff identifies no duty or breach on the part of Gulf South, and cannot identify any such duty or breach, due to the fact that Gulf South did not undertake to perform any aspect about the test of which he now complains. *See Wells v. DISA Glob. Sols. Inc.*, No. 6:17-CV-00014, 2018 WL 3827590, at *7 (W.D. La. June 28, 2018), *report and recommendation adopted*, No. 6:17-CV-00014, 2018 WL 3827264 (W.D. La. Aug. 10, 2018) ("Louisiana law is clear that no duty to protect against or control the actions of a third party exists unless a special relationship exists to give rise to such a duty.")

45.     Nor can Plaintiff establish cause, as Gulf South's collection admittedly had nothing to do with the alleged mistakes made by the MRO:

> Plaintiff did recall receiving a phone call from DISA's MRO…in 2017 regarding a positive urine test that did not involve his social security number but had his phone number and employee number. **The MRO realized** that the social security number associated with the positive urine test was not Plaintiff's and Plaintiff was told that **the MRO had made an error** and that Plaintiff's name was incorrectly associated to the cocaine positive 2017 drug test result and that he **(the MRO) would correct the error**.

> (Ex. 1 at Petition, ¶ 12 (emphasis added).)

46.     The Eastern District of Louisiana was recently tasked with determining whether a plaintiff had stated a viable negligence claim against a MRO, who reviewed Plaintiff's drug test result (allegedly negligently) and determined Plaintiff had no legitimate explanation for the result. *See id.* In analyzing the causation element of the plaintiff's negligence claim, the *Loiacano* court stated as follows:

Plaintiff does not allege that Defendant performed the inaccurate test, nor does Plaintiff allege that Defendant reported the inaccurate result. If Defendant's conduct is separate and apart from the testing and the subsequent reporting at issue here, Defendant could not have owed Plaintiff a duty to act reasonably with respect to those acts. Essentially, what Plaintiff is alleging is that Defendant failed to rectify, which also raises an issue of causation. What Plaintiff characterizes as negligence are Defendant's omissions after the test was conducted and had already been reported to his employer. If Defendant's conduct was neither the cause-in-fact of the test being performed inaccurately, nor the result being reported, this Court fails to see how Defendant's conduct would constitute the cause-in-fact of Plaintiff's termination. Under these facts, Plaintiff would not be entitled to relief against this particular Defendant.

*Id*. at *5.

47.     The same rationale applies to Gulf South in the instant case. Plaintiff has alleged no facts suggesting that Gulf Coast's collection of his sample, more than two years prior to his allegedly being denied access to a facility, has anything to do with the assertions of alleged negligence in his negligence count, which solely relates to DISA's and the MRO's alleged failure to report to him the correct results of his test. (Ex. 1 at Petition, Count III.) Plaintiff's alleged facts simply do not state a claim against Gulf South. Rather his claims lie squarely on the alleged acts of DISA and the MRO reporting accurate results, albeit those of some other donor, to Plaintiff.

48.     Finally, the conclusory allegations of negligence that Plaintiff attributes to Gulf South are legally insufficient to establish a cause of action for negligence. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .") (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")).

## I.   Plaintiff is Not Entitled to Injunctive Relief.

49.   "Injunctive relief must be reasonably tailored to the specific facts of this case, as reflected by the trial record." *E.E.O.C. v. Boh Bros. Const. Co., LLC*, No. CIV.A. 09-6460, 2011 WL 3585599, at *1 (E.D. La. Aug. 16, 2011).  Issuance of an injunction "rests primarily in the informed discretion of the district court." *Marshall v. Goodyear Tire & Rubber Co.,* 554 F.2d 730, 733 (5th Cir.1977).

50.   "Requests for declaratory or injunctive relief are subject to the jurisdictional standing requirements of Article III." *Percle v. Purdue*, No. 17-CV-549, 2017 WL 7048558, at *2 (W.D. La. Dec. 28, 2017), *report and recommendation adopted,* No. 2:17-CV-549, 2018 WL 522766 (W.D. La. Jan. 23, 2018) (citing *Hainze v. Richards*, 207 F.3d 795, 802 (5th Cir. 2000)). "To meet this requirement, a plaintiff must demonstrate that a case or controversy exists." (citing *Bauer v. Texas*, 341 F.3d 352, 357–58 (5th Cir. 2003)).  In requests for declaratory and injunctive relief, a plaintiff is therefore required to "'allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'" *Id*. (quoting *Bauer*, 341 F.3d at 358).  "Past exposure to illegal conduct is insufficient 'if unaccompanied by any continuing, present adverse effects.'" *Id.* (quoting *City of Los Angeles v. Lyons*, 103 S. Ct. 1660, 1665 (1983)).

51.   Plaintiff, moreover, is not seeking injunctive relief against Gulf South.  In Count IV of his Petition, he requests, "injunctive relief in the form of immediate removal of the [allegedly] false positive drug [test] results from **DISA's files**, removal from **DISAWorks drug testing database**, [and] removal from all drug testing databases within Defendants' control." (Ex. 1 at Petition, Count IV (emphasis added).) Thus, the only Defendant from who Plaintiff seeks injunctive relief is DISA.  (*See id*.) Further, the only Defendant named in the Rule to Show Cause attached to Plaintiff's Petition is DISA.  (*See id*. at Rule to Show Cause.)

52.     In addition, as set forth above, Plaintiff cannot establish any of his causes of action against Gulf South.  Thus, there is no justiciable case or controversy that is amenable to injunctive relief.  Moreover, Plaintiff cannot show that Gulf South has wronged him in the past or is susceptible to wronging him in the future.  In short, Plaintiff cannot establish any of his claims against Gulf South and is therefore not entitled to injunctive relief from Gulf South.

### III.     CONCLUSION

For these reasons, DISA files this Notice of Removal and Improper Joinder and requests removal of the State Court Action to the United States District Court for the Western District of Louisiana, in accordance with 28 U.S.C. §§ 1332(a)(1), 1441(a) & 1446.  DISA respectfully requests that this Court assume jurisdiction over this action and that all further proceedings in the State Court Action be stayed.

Respectfully submitted,

/s/ Brian W. Capell
**Brian W. Capell** (Bar #32381)
bwcapell@liskow.com
**John S. Troutman** (Bar #36059)
jtroutman@liskow.com
LISKOW & LEWIS
822 Harding St.  (70503)
Post Office Box 52008
Lafayette, Louisiana 70505
(337) 232-7424  (Telephone)
(337) 367-2399  (Facsimile)

**Holly H. Williamson**
Texas State Bar No. 21620100
hwilliamson@HuntonAK.com
**Michael Reed**
Texas State Bar No. 24083717
mreed@HuntonAK.com
**Jessica Knapp Little**
State Bar No. 24084389
jessicalittle@HuntonAK.com
HUNTON ANDREWS KURTH LLP
600 Travis St., Suite 4200
Houston, Texas 77002
(713) 229-5700 (Telephone)
(713) 229-5750 (Facsimile)

**ATTORNEYS FOR DEFENDANT
DISA GLOBAL SOLUTIONS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 11th day of December 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to all counsel registered for electronic service.  I further certify that I have served a copy of the foregoing pleading on all parties to this proceeding not registered for electronic service, by e-mailing, faxing, and/or mailing the same by United States mail, properly addressed and first-class postage prepaid.


/s/Brian W. Capell